FILED

2015 AUG 24  PM 4: 24

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

XITRONIX CORPORATION,
                    **Plaintiff,**

-vs-                                                  **Case No. A-14-CA-1113-SS**

KLA-TENCOR CORPORATION,
                    **Defendant.**

_____

## O R D E R

BE IT REMEMBERED on the 21st day of August 2015, the Court held a hearing in the above-styled cause, and the parties appeared by and through counsel. Before the Court are Defendant KLA-Tencor Corporation (KLA)'s Motion to Amend Order to Certify Issue for Interlocutory Appeal [#15], Plaintiff Xitronix Corporation (Xitronix)'s Response [#16], and KLA's Reply [#17]. Having reviewed the documents, the relevant law, the file as a whole, and the parties' arguments at hearing, the Court now enters the following opinion and orders DENYING the motion.

### Background

On June 25, 2015, the Court denied Defendant KLA's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Order of June 25, 2015 [#12]. On July 21, 2015, KLA filed a motion to amend the order to certify the issue for interlocutory appeal. *See* Mot. Amend [#15]. Specifically, the issue KLA wants to certify for appeal is "whether a plaintiff can satisfy the enforcement requirement of a *Walker Process* claim by meeting the substantial controversy test for Declaratory Judgment of patent invalidity under *MedImmune*." *Id.* at 1.



While the order speaks for itself, the Court provides a brief synopsis. Xitronix is trying to compete with KLA in the dopant activation metrology marketplace but complains KLA has used invalid patents over the course of many years to prevent Xitronix from lawfully competing. *See* Order of June 25, 2015 [#12] at 1–5 (detailing the background of this case and the history of litigation between these two parties). Based on this alleged conduct, Xitronix filed the current lawsuit, asserting a single cause of action, a *Walker Process* antitrust claim. A *Walker Process* claim is premised on the idea that the enforcement of a patent procured by fraud on the Patent Office may be violative of the Sherman Act. Xitronix alleges its *Walker Process* claim based on KLA's alleged fraudulent procurement of the '260 Patent. KLA filed a motion to dismiss the claim, which focused on the meaning of "enforcement" under a *Walker Process* claim.

The Court first resolved the parties' dispute over the applicable legal standard. KLA's basic position was that "enforcement" required an overt act of enforcement, and since the parties did not dispute that KLA had taken no overt action with respect to the '260 Patent, then KLA argued Xitronix lacked standing to assert its *Walker Process* claim. *See* Order of June 25, 2015 [#12] at 7. The Court agreed "enforcement" is a requirement but disagreed that "enforcement" meant an overt act. The Court relied on the Federal Circuit's opinion in *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341 (Fed. Cir. 2004), which addressed the standard for enforcement in *Walker Process* claims and pegged that standard to the applicable standard for Declaratory Judgment actions of patent invalidity:

> We therefore hold that, as a matter of Federal Circuit antitrust law, the standards that we have developed for determining jurisdiction in a Declaratory Judgment Action of patent invalidity also define the minimum level of 'enforcement' necessary to expose the patentee to a *Walker Process* claim for attempted monopolization.

*Id.* at 1358.  Based on the *Unitherm* holding, this Court concluded: "for *Walker Process* claims, 'enforcement' does not mean active, overt enforcement and instead refers to whatever is necessary to establish jurisdiction in a Declaratory Judgment Action."  Order of June 25, 2015 [#12] at 8–9.

The next question then became: what is the applicable standard for determining jurisdiction in a Declaratory Judgment Action?  In 2007, the Supreme Court in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007),  rejected the previously prevailing "reasonable apprehension of suit" test and instead held the proper test is whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.* at 127.  Therefore, the Court reasoned the "substantial controversy" test is the applicable standard for enforcement under *Walker Process*.  *See* Order of June 25, 2015 [#12] at 9–10.

After establishing the applicable legal standard, the Court then considered the sufficiency of Xitronix's allegations, which—as noted by the Court—was actually never disputed by KLA, and the Court held the allegations satisfied the "substantial controversy" test.  *Id.* at 11–12.  Finally, the Court noted policy considerations supporting its conclusion that Xitronix's allegations survived Rule 12 scrutiny.  *Id.* at 12–14.[1]

Now, KLA has filed its motion to amend the Court's order to certify an issue for appeal.  In short, KLA argues that since the Supreme Court's decision in *MedImmune* in 2007, which changed the Declaratory Judgment standard, the Federal Circuit has not addressed that decision's impact on the Federal Circuit's 2004 decision in *Unitherm*, which held the standard for *Walker Process*

---

[1] KLA also moved to dismiss Xitronix's case for failure to allege fraud on the PTO.  The Court denied that ground as well, but the fraud-on-the-PTO allegations are not at issue in KLA's pending motion to amend.

enforcement is the same as that for Declaratory Judgment jurisdiction. *See* Mot. Amend [#15] at 2.

Put differently, KLA argues the Federal Circuit has not specifically held the *MedImmune* "substantial

controversy" test should be used to define "enforcement" in *Walker Process* claims. KLA continues

to insist that the "enforcement" element cannot be satisfied by meeting the "substantial controversy"

test but rather requires active, overt enforcement.

## Analysis

### I.    Legal Standard—28 U.S.C. § 1292(b)

Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b).

Therefore, Defendants must show there is (a) a controlling question of law, (b) to which there

is substantial ground for difference of opinion, and (c) an immediate appeal from the order may

materially advance the ultimate termination of the litigation.[2]

---

[2] The Court notes a few preliminary issues. KLA contends the appropriate appellate court for *Walker Process* claims is the Federal Circuit, and the Court agrees. *See Ritz Camera & Image, LLC v. SanDisk Corp.*, 700 F.3d 503, 504–05 (Fed. Cir. 2012) (considering on interlocutory appeal an issue concerning *Walker Process* standing). The Court also agrees with KLA that there is no substantive difference in how to analyze a § 1292(b) motion between Federal Circuit law and Fifth Circuit law.

In addition, Xitronix argues in its response that KLA's motion to amend was untimely because it was filed more than ten days after entry of the Court's order denying KLA's motion to dismiss. Xitronix misreads § 1292(b), which provides a ten-day deadline to file an appeal with the court of appeals from the date a district court certifies an order for interlocutory appeal. *See* 28 U.S.C. § 1292(b). Section 1292 does not provide a deadline for asking a district court to

## II.     Application

## A.     Controlling Question of Law

KLA argues the issue it wants certified for appeal—whether the enforcement element of a *Walker Process* claim can be met by establishing a substantial controversy under the *MedImmune* test for declaratory judgment jurisdiction—is a controlling question of law.  Xitronix actually makes no argument disputing this contention.  The Court, for reasons explained below, does not agree with how KLA has framed the controlling question of law.  Instead, the controlling question of law is better framed as: what is the requisite level of enforcement necessary to plead a *Walker Process* claim?  The resolution of that issue controls the outcome of the case.

## B.     Substantial Ground for Difference of Opinion

### 1.     KLA's Question and the Question that Lies Beneath

KLA argues there is a substantial ground for difference of opinion regarding whether the "substantial controversy" test from *MedImmune* is the appropriate standard for *Walker Process* standing.  KLA's primary contention is that *MedImmune* was decided after *Unitherm* and therefore the Federal Circuit "has not addressed the continued viability of the Declaratory Judgment standard as a proxy for the enforcement element of a *Walker Process* claim."  Mot. Amend [#15] at 4.  According to KLA, "it is simply no longer appropriate to use the declaratory judgment standard as the test for enforcement under *Walker Process*" because "[w]hereas the 'reasonable apprehension of suit' test pre-*MedImmune* was generally consistent with the common understanding of

---

amend its order to include a certification of an issue for interlocutory appeal.  In this case, the Court does not find KLA's motion untimely and considers its merits.

enforcement (i.e., 'compelling compliance'), the relaxed *MedImmune* standard is not." Reply [#17] at 2 (citations and footnotes omitted).

The Court disagrees both with KLA's logic and its reading of the relevant law. Simply because the Federal Circuit has not explicitly re-affirmed its holding in *Unitherm* since the Supreme Court's decision in *MedImmune* does not mean the Federal Circuit's holding in *Unitherm* is in doubt. *Unitherm* matched the standard for *Walker Process* enforcement to the standard for Declaratory Judgment jurisdiction. *MedImmune* changed the standard for Declaratory Judgment jurisdiction from the "reasonable apprehension of suit test" to the "substantial controversy" test. Nothing about *MedImmune* calls into question *Unitherm*'s holding. *See* Order of June 25, 2015 [#12] at 9–10. Instead, simply applying precedent leads to the clear conclusion that the "substantial controversy" test from *MedImmune* is the appropriate standard for the enforcement element of *Walker Process* claims. Therefore, there is no substantial ground for difference of opinion on the question KLA has presented to the Court: whether the "substantial controversy" test from *MedImmune* is the appropriate standard for enforcement under a *Walker Process* theory of liability.

The way KLA framed the issue, however, obscures KLA's central contention, and when the Court re-frames the issue, the embedded question emerges. KLA's argument in its motion to dismiss rests on the idea that the "substantial controversy" test is not the applicable standard and that the actual applicable standard, at minimum, requires active, overt enforcement. If the standard requires active, overt enforcement, then Xitronix's case must be dismissed because the parties agree KLA has not taken any affirmative acts of enforcement specifically with respect to the '260 Patent. That is KLA's position. In light of this position, the true controlling question of law in this case is: what is the minimum level of enforcement necessary to plead a *Walker Process* claim? Even more

precisely, the helpful question is: must a patentee have engaged in overt enforcement action in order to be subject to *Walker Process* liability?

The Federal Circuit's holding in *Unitherm* answers that question in the negative, as it squarely rejects requiring active, overt enforcement for *Walker Process* standing, regardless of the precise governing standard for Declaratory Judgment jurisdiction. A straightforward reading of *Unitherm* makes this understanding clear. *Unitherm*, 375 F.3d at 1357–58. As described in the Court's order denying KLA's motion to dismiss, the *Unitherm* court directly compared *Walker Process* claims with the requirements for a Declaratory Judgment Action based on the concept of "enforcement":

> Strictly speaking, a *Walker Process* claim is premised upon 'the *enforcement* of a patent procured by fraud on the Patent Office.' [*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174 (1965)]. A plaintiff may bring a Declaratory Judgment Action of patent invalidity, however, even in the absence of overt enforcement actions.

*Id.*

Given this apparent tension between the two standards, the Federal Circuit resolved any differences when it held "as a matter of Federal Circuit antitrust law, the standards that we have developed for determining jurisdiction in a Declaratory Judgment Action of patent invalidity also define the minimum level of 'enforcement' necessary to expose the patentee to a *Walker Process* claim for attempted monopolization." *Id.* at 1358. In other words, just as "[a] plaintiff may bring a Declaratory Judgment Action of patent invalidity . . . even in the absence of overt enforcement actions," so may "[a] plaintiff . . . bring a [*Walker Process* claim] even in the absence of overt enforcement actions."

As such, KLA's focus on *MedImmune* and how it changed the Declaratory Judgment standard misses the mark. The *Unitherm* court is clear that *Walker Process* enforcement, just like Declaratory Judgment jurisdiction, does not require overt enforcement. The fact *MedImmune* subsequently changed the standard for Declaratory Judgments—to an even more relaxed, flexible test—has no impact on that legal reality. In a related vein, and in a point already made by the Court in the order denying the motion to dismiss, "KLA's argument is immaterial because neither the Declaratory Judgment standard in existence pre-*MedImmune* nor the standard established in *MedImmune* include overt enforcement of the patent as a requirement." *See* Order of June 25, 2015 [#12] at 10 & n.1 (describing the "reasonable apprehension of suit" test in existence pre-*MedImmune* and how it did not require overt enforcement).

In dissecting KLA's requested issue for appeal, it becomes apparent that the certified question KLA needs answered in its favor cannot be whether a plaintiff can plead enforcement under a *Walker Process* claim by satisfying the "substantial controversy test" from *MedImmune*. Assuming one accepts *Unitherm*'s holding that the *Walker Process* standard for enforcement matches the Declaratory Judgment standard, then KLA cannot achieve a favorable outcome on that question because no matter what Declaratory Judgement standard applies, there is no requirement of overt enforcement. The true question KLA needs answered in its favor is whether *Unitherm* is still good law. If *Unitherm* were not good law and *Walker Process* standing was not pegged to Declaratory Judgment standing, then perhaps there would be no requirement of overt enforcement. But there is absolutely no reason for this Court to question the continued viability of *Unitherm*.

In sum, the question of law presented by KLA—whether a plaintiff can plead enforcement under a *Walker Process* claim by satisfying the "substantial controversy" test from *MedImmune*—is

not a controlling one. Moreover, for the record, the Court does not consider this a question on which there is substantial ground for difference of opinion. *Unitherm* pegged the *Walker Process* standard for enforcement to the Declaratory Judgment standard, and *MedImmune* announced the prevailing Declaratory Judgment standard. As such, *MedImmune*'s "substantial controversy" test is applicable to *Walker Process* claims. With respect to the actual controlling question of law in this case—whether a patentee must engage in overt enforcement actions in order to be subject to *Walker Process* liability—the Court also does not find there is substantial ground for difference of opinion. That issue was decided by *Unitherm*, which held overt enforcement is not required, and the Court can identify no reason why the Federal Circuit should be reconsidering its decision in *Unitherm*.

## 2.    KLA's Cited Case Law

KLA has cited a few cases purportedly demonstrating a substantial ground for difference of opinion, and the Court addresses those cases in turn. First, KLA suggests there is substantial ground for difference of opinion because "the Federal Circuit has . . . acknowledged that the decision in *MedImmune* raises a question that will, at some point, need to be addressed." Mot. Amend [#15] at 2 (citing *Hydril Co. LP v. Grant Prideco LP*, 474 F.3d 1344, 1350 (Fed. Cir. 2007)). KLA appears to be implying that the Federal Circuit in *Hydril* raised a question to be answered another day concerning *MedImmune*'s impact on the enforcement element of a *Walker Process* claim. In *Hydril*, the district court concluded allegations of threatened enforcement against customers rather than against the plaintiff competitor did not satisfy the minimum level of enforcement necessary to expose the patentee to *Walker Process* liability. *Hydril*, 474 F.3d at 1350. The Federal Circuit reversed, holding "a valid *Walker Process* claim may be based upon enforcement activity directed against the plaintiff's customers." *Id.* In doing so, the *Hydril* court specifically re-affirmed

*Unitherm*'s holding that the standard for Declaratory Judgment jurisdiction defines the minimum level of enforcement necessary to state a *Walker Process* claim. *Id.* (citing *Unitherm*, 375 F.3d at 1358). The Court went on to note that the case before it "does not present an occasion to address [*MedImmune*], which dealt with the standard for determining when a declaratory judgment action satisfies the case-or-controversy requirement of the Declaratory Judgment Act." *Id.* In other words, the "enforcement" element was not in dispute as the defendant had undisputedly threatened enforcement of the patent against the plaintiff's customers, and therefore the court did not need to address *MedImmune*, which defines the minimum level of enforcement necessary for *Walker Process* liability. Accordingly, *Hydril* does not stand for the proposition suggested by KLA, and if anything, the case actually supports Xitronix's position because it re-affirms the viability of *Unitherm* post-*MedImmune*.

Second, KLA cites the Federal Circuit's 2012 decision in *Ritz Camera* because, according to KLA, it "rejected the notion that it is appropriate to use the Declaratory Judgment standard for patent invalidity to evaluate whether a plaintiff can bring a *Walker Process* claim." Mot. Amend [#15] at 5. The question and holding in *Ritz Camera* dealt with different circumstances than those in the current lawsuit, and they do not undermine use of the declaratory judgment standard for determining jurisdiction when determining the minimum level of enforcement required to plead a *Walker Process* claim. The *Ritz Camera* court addressed the following question: "whether an antitrust action against the owner of a patent, based on the *Walker Process* theory of liability, can be brought by a direct purchaser of goods that are protected by the patent, even if the purchaser faces no threat of an action for patent infringement and has no other basis to seek a declaratory judgment holding the patent invalid or unenforceable." *Ritz Camera*, 700 F.3d at 505. The court held "a direct

purchaser is not categorically precluded from bringing a *Walker Process* antitrust claim, even if it would not be entitled to seek declaratory relief against the patentee under the patent laws." *Id.*

In other words, *Ritz Camera* establishes that *Walker Process* standing is not limited to those plaintiffs who could bring a declaratory judgment action for patent invalidity as such a limitation would improperly exclude consumer plaintiffs suffering antitrust harm.  The instant case does not implicate that issue; KLA has not suggested Xitronix, which is a competitor and not a consumer, lacks standing to bring a declaratory judgment challenging the validity of the '260 Patent.  The issue in this lawsuit is the minimum level of enforcement required to plead  a *Walker Process* claim, and *Ritz Camera* did not discuss this question.  Indeed, notably absent from *Ritz Camera* is any mention of *Unitherm*.  Moreover, there was no dispute in *Ritz Camera* that the patentee had enforced its patents both against its competitors and the competitors' customers. *Id.* at 505.  In sum, *Ritz Camera* does not even state an opinion on the controlling question of law in this case, much less does it suggest a substantial ground for difference of opinion on that question.

Third, KLA contends the court in *Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-702-XR, 2011 3359554 (W.D. Tex. Aug. 4, 2011), encountered the meaning of "enforcement," and relying on *Unitherm*'s instruction that "[i]f the patentee has done nothing but obtain a patent in a manner that the plaintiff believes is fraudulent, the courts may not entertain a *Walker Process* claim," reached "a very different result" from this Court.  Mot. Amend [#15] at 5 (citing *Aguirre*, 2011 3359554, at *6).  In *Aguirre*, the alleged "enforcement" was the patentee's engagement in efforts to "advertise heavily." *Aguirre*, 2011 3359554, at *6.  The court, relying on Black's Law Dictionary's definition of "enforcement" as "the act or process of compelling compliance with a [patent]," concluded heavy advertising was "not the typical means of enforcement," and the plaintiff did "not

address any other purported means of enforcement." *Id.* Therefore, the court concluded the plaintiff

had failed to satisfy the "enforcement" element and dismissed the *Walker Process* claim. *Id.*

The Court does not consider the *Aguirre* opinion at odds with this Court's order. The Court

agreed with *Aguirre* there is an "enforcement" element, and the Court agreed that simply procuring

a patent by fraud is insufficient to state a claim for antitrust violations. *See* Order of June 25, 2015

[#12] at 7. The *Aguirre* court simply concluded heavy advertising did not satisfy the "enforcement"

element, a conclusion this Court finds reasonable. While the *Aguirre* court did cite *Unitherm* as

imposing the "enforcement" element, it did not address how to satisfy that element by asserting facts

establishing declaratory judgment jurisdiction, as held in *Unitherm*. Instead, the *Aguirre* court

referred to Black's Law Dictionary to define "enforcement." This Court looked to *Unitherm* for the

definition of the minimum level of enforcement required and summarized Xitronix's detailed

allegations—in addition to the alleged fraudulent procurement of the patent—that satisfied the

"substantial controversy" test. *Id.* at 11–12. While the *Aguirre* court's approach was a bit different

from this Court's method, the Court does not consider the two inconsistent.

Fourth, KLA relies on *In re Netflix Antitrust Litigation*, 506 F. Supp. 2d 308 (N.D. Cal. June

14, 2007), which involved a class action of the consuming public asserting *Walker Process* claims

against Netflix. Netflix moved to dismiss, arguing, among other things, the plaintiffs had failed to

allege the minimum level of enforcement sufficient to confer standing. *Id.* at 317–18. The court first

noted *Unitherm*'s holding requiring a *Walker Process* plaintiff to plead the minimum level of

enforcement necessary to plead a Declaratory Judgment action in order to plead a *Walker Process*

claim. *Id.* at 317. The court also observed how *MedImmune* altered the standard for Declaratory

Judgment standing. *Id.* Applying this law to the allegations, the court concluded the plaintiffs, who

merely alleged the defendants had alerted the plaintiffs to their patents' existence, had failed "to meet the minimum standard for sustaining an action for declaratory judgment." *Id.* at 318.[3] This analysis and conclusion is consistent with this Court's opinion.

Having considered the cases cited by KLA, the Court finds that case law does not illustrate a substantial ground for difference of opinion on the controlling question of law before the Court.

## C.   Material Advancement of the Ultimate Termination of the Litigation

Because the Court finds KLA has failed to satisfy the second element of a § 1292(b) motion, it need not address whether certification of the requested issue will materially advance the ultimate termination of the litigation.

## Conclusion

Before closing, the Court notes a few other aspects of this case making it ill-suited as a vehicle for interlocutory appeal. First, the case involves highly unique circumstances. This lawsuit—the third between these parties before this Court—involves allegations that KLA, after having its previous patent (the '441 Patent) declared invalid in a final judgment after a trial on the merits in this very Court, went to the PTO and obtained a new patent (the '260 Patent) covering the same technology through fraudulent representations and omissions directly related to the Court's final judgment. As a result, Xitronix, who first sued KLA in September 2008 concerning the '441 Patent, is still—almost seven years later— being illegally excluded from the relevant marketplace

---

[3] As highlighted by KLA, the *Netflix* court goes on to state: "Enforcement requires some affirmative act which is lacking in the pleadings." *Netflix*, 506 F. Supp. 2d at 318. The Court finds this statement confusing because the *Netflix* court recognized the standard for the minimum level of enforcement matches the standard for declaratory judgment standing, yet the *Netflix* court cites no legal authority indicating the standard for declaratory judgment standing "requires some affirmative act." As such, the Court agrees with KLA this specific statement is inconsistent with the Court's order. Nevertheless, the *Netflix* court's broader analysis is otherwise in harmony with this Court's order and *Unitherm*. One statement from a fellow district court that was not essential to that court's holding is not sufficient on its own to amount to a substantial ground for difference of opinion on the controlling question of law in this case.

by KLA's use of patents.  As emphasized by the Court in its order denying the motion to dismiss, due to these unique allegations as well as the substantial discretion afforded courts in deciding whether to exercise Declaratory Judgment jurisdiction, the Court's decision to deny KLA's motion to dismiss does not "open the floodgates of *Walker Process* litigation or expose patentees to such claims simply based on their procurement of a patent." *See* Order of June 25, 2015 [#12] at 13–14 & n.2.  The Court clearly cabined its decision to the particular circumstances of this case, and as such, it is not well-tailored for interlocutory appeal.

Second, the Court notes that on July 29, 2015, KLA, for unknown reasons, actually filed disclaimers of the relevant claims of the '260 Patent with the Patent & Trademark Office. *See* Reply [#17-1] Ex. 1 (disclaimer of claims 1, 3, 4, and 5 of the '260 Patent).  As such, there would appear to be no threat of ongoing harm, but liability and damages must still be litigated.  The Court believes the most efficient way to handle the case is to proceed to entrance of a judgment one way or the other, and the parties can appeal the case in its entirety at that time instead of piecemeal as KLA requests.  While KLA offered some statistics at the hearing suggesting the turnaround on an interlocutory appeal might be as brief as a month or two, this Court has learned better over the years than to speculate on such matters.

In conclusion, having carefully considered KLA's motion to amend, the Court does not find there is a controlling question of law appropriate for interlocutory appeal.

Accordingly,

IT IS ORDERED that Defendant KLA-Tencor Corporation's Motion to Amend Order to Certify Issue for Interlocutory Appeal [#15] is DENIED.

SIGNED this the __24ᵗʰ__ day of August 2015.

Bam Sparks

SAM SPARKS
UNITED STATES DISTRICT JUDGE