IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**
2016 AUG 26  PM 3: 11
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
         DEPUTY

| | |
|---|---|
| **XITRONIX CORPORATION,**<br>Plaintiff, | |
| -vs- | CAUSE NO.:<br>A-14-CA-01113-SS |
| **KLA-TENCOR CORPORATION,**<br>Defendant. | |

# ORDER

BE IT REMEMBERED on the 7th day of April 2016, the Court held a hearing in the above-styled cause, and the parties appeared by and through counsel. Before the Court are Defendant KLA-Tencor Corporation (KLA)'s Motion for Summary Judgment [#56], Plaintiff Xitronix Corporation (Xitronix)'s Response [#57] in opposition, KLA's Reply [#58] in support, Xitronix's Memorandum [#71] in opposition, KLA's Memorandum [#73] in support, and KLA's Notice of Supplemental Authority [#77]. Having considered the documents, the file as a whole, and the governing law, the Court now enters the following opinion and order.

## Background

This case involves *Walker Process* antitrust claims based on KLA's alleged fraudulent procurement of a patent. KLA is the assignee of the following related patents: (1) United States Patent No. 8,817,260 (the '260 Patent); (2) United States Patent No. 7,646,486 (the '486 Patent); and (3) United States Patent No. 7,362,441 (the '441 Patent). The '260 Patent is a continuation of the '486 Patent, which is a continuation of the '441 Patent, which itself was a continuation of an earlier patent, United States Patent No. 7,126,690 (the '690 Patent). The patented technology

involves a system which provides high resolution, non-destructive evaluation of semiconductor wafers as they pass through various semiconductor manufacturing stages.

Xitronix's *Walker Process* claims represent the third installment in a trilogy of lawsuits between the parties. In this lawsuit, Xitronix alleges KLA, after having its previous patent (the '441 Patent) declared invalid in a final judgment after a trial on the merits in this Court, obtained a new patent (the '260 Patent) covering the same technology through fraudulent representations and omissions about the state of the prior art. According to Xitronix, KLA's fraudulent procurement of the '260 Patent "was, and is, specifically intended to monopolize and destroy competition in the market for dopant activation metrology, a market currently valued at approximately $650 million." Compl. [#1] ¶ 12. Xitronix represents KLA's Therma-Probe 680 and Xitronix's XP700 system are the only two products in the market, and KLA, by obtaining the '260 Patent, has the power to exclude Xitronix from manufacturing or selling its product. *Id.* ¶ 13.

Before turning to the substance of KLA's present motion for summary judgment, the Court provides a brief description of the parties' litigious history.

I.  **The First Two Lawsuits**

First, in September 2008, Xitronix sued KLA in this Court, asserting a declaratory judgment of non-infringement with respect to the '441 Patent and its parent, the '690 Patent. *See* Compl. [#1] ¶ 1, *Xitronix Corp. v. KLA-Tencor Corp.*, No. 1:08-CV-723-SS (W.D. Tex. Jan. 31, 2011) (the First Lawsuit). KLA had apparently informed Xitronix through numerous letters of its belief Xitronix was engaged in ongoing infringement of KLA's patents, prompting Xitronix to respond with its non-infringement suit. *Id.* at 4–9. In November 2010, the parties tried the case to a jury, which returned a verdict finding Xitronix had infringed claim 7 of the '441 Patent but had

2

not infringed any other claims. Order of Jan. 31, 2011 [#210] at 1, the First Lawsuit. The jury also found, however, that claim 7 of the '441 Patent was invalid as anticipated by prior art. *Id.* at 1–2. The jury further found all of the asserted claims—claims 7, 9, 11, and 12—of the '441 Patent were invalid due to obviousness. *Id.* at 2. Post-trial, the Court ordered the parties to brief whether the claims at issue were also invalid due to indefiniteness, and the Court ultimately held the claims were indefinite. *Id.* at 3, 5–9. Additionally, the Court held there was ample evidence to support the jury's verdict of invalidity based on anticipation and obviousness. *Id.* at 10–12. KLA did not appeal the final judgment.

Second, in March 2011, Xitronix filed another lawsuit against KLA in state court, alleging business-tort claims for damages under Texas law arising from KLA's publicized patent-infringement allegations, which was subsequently removed by KLA to this Court. *See* Notice Removal [#1], *Xitronix Corp. v. KLA-Tencor Corp.*, No. 1:11-CV-358-SS (W.D. Tex. July 7, 2011) (the Second Lawsuit). Xitronix's state law claims were based on KLA's conduct in and surrounding the First Lawsuit, including: "(1) KLA's alleged knowing false statements of infringement of the '411 Patent by Xitronix; and (2) KLA's alleged bad faith use of litigation to impair Xitronix's business operations." Order of July 7, 2011 [#16] at 2, the Second Lawsuit. Xitronix moved to remand, and the Court granted the motion because the only substantial question of patent law (which Xitronix alleged provided the basis for removal) was already decided in the First Lawsuit. *Id.* On remand, the state court, according to Xitronix's allegations, granted summary judgment in favor of KLA for unspecified reasons, and on appeal, the Third District Court of Appeals of Austin affirmed the summary judgment on res judicata grounds, holding Xitronix's antitrust claims arose out of the same nucleus of operative facts underlying its claims in the First Lawsuit. Compl. [#1] ¶ 34. The Supreme Court of Texas denied Xitronix's

petition for review of that decision. *Xitronix Corp. v. KLA-Tencor Corp.*, No. 14-0736 (Tex. Feb. 27, 2015), *available at* http://www.txcourts.gov/supreme/orders-opinions/2015/february/february-27-2015/.

## II. The Current Lawsuit

In the current lawsuit, Xitronix asserts *Walker Process* antitrust claims based on KLA's alleged fraudulent procurement of the '260 Patent. KLA obtained the '260 Patent over a period of years involving back-and-forth exchanges with the PTO. KLA filed its patent application for the '260 Patent on November 11, 2009, and on February 7, 2011, approximately one week after the Court's entry of the final judgment in the First Lawsuit but before being informed of the final judgment, the examiner allowed KLA's pending claims in the '260 Patent, claims which Xitronix contends are essentially identical to the invalidated patent claims of the '441 Patent.[1] *See* Resp. [#57] at 8.

On February 10, 2011, KLA's patent prosecution attorney, Michael Stallman, did not allow the '260 Patent to proceed to issuance, and instead submitted a request for a continued examination (RCE) of the '260 Patent and an information disclosure statement (IDS) listing an "Executed ORDER from the United States District Court for the Western District of Texas, Austin Division, Case No. A-08-CA-723-SS, dated January 31, 2011, 13 pages in length."[2] Mot. Summ. J. [#56-3] Ex. 3 (IDS) at 94. Xitronix faults Stallman for failing to explain to the examiner how this Court's January 31, 2011 Order related to the then-pending '260 Patent; how the then-pending claims were identical to, or broadened from, claims in the '441 Patent held

---

[1] On July 29, 2015, KLA disclaimed—without explanation—the relevant '260 Patent claims with the PTO. Reply [#17-1] Ex. 1 (Disclaimer of Claims 1, 3, 4, and 5 of the '260 Patent). As this Court previously held, though "there would appear to be no threat of ongoing harm, [] liability and damages must still be litigated." Order of Aug. 24, 2015 [#20] at 14.

[2] Stallman previously disclosed the jury verdict to the PTO on November 18, 2010, and argued against the jury's findings. Resp. [#57-7] Ex. 7 (Amendment in Response to Non-Final Office Action) at 5.

invalid as a final judgment in the First Lawsuit; and how, as a result, the then-pending claims were unpatentable. *Id.* Xitronix also faults Stallman for failing to inform the PTO that KLA did not appeal the final judgment in the First Lawsuit. *Id.*

On July 12, 2013, a newly appointed examiner initialed the final judgment in the First Lawsuit and Xitronix's litigation briefs as "considered." IDS at 94. On July 25, 2013, the examiner issued an initial rejection of the claims in the continuing '260 Patent application. Resp. [#57-9] Ex. 9 (July 25, 2013 Office Action) at 3–8. The examiner concluded the claims were obvious over other art, specifically "Rosencwaig in view of Opsal." *Id.* at 6. Opsal disclosed a Therma Probe system for evaluating semiconductor samples, while Rosencwaig disclosed a similar device for evaluating biological samples, leading the examiner to conclude it would have been obvious to use the wavelengths disclosed in Rosencwaig to evaluate semiconductor samples. *Id.* at 6–9. The examiner further rejected the term "optimize" in the claims as indefinite, and instead interpreted the claims as using the term "maximize." *Id.* at 2.

On October 8, 2013, Stallman amended claims 3 and 10 to change the term "optimize" to "maximize." Resp. [#57-10] Ex. 10 (Oct. 8, 2013 Amendment) at 2–3, 5. Stallman also responded to the examiner's initial rejection of the claims based on "Rosencwaig in view of Opsal," arguing the claims were not obvious over prior art. In doing so, Stallman made the following statement, which Xitronix insists constitutes a material misrepresentation in light of the final judgment in the First Lawsuit:

> "As discussed below, the prior art fails to teach [the 360 to 410 nm] wavelength range for use in semiconductor samples when performing modulated optical reflectivity measurements."

*Id.* at 6. Stallman proceeded to discuss the Rosencwaig, Opsal, Alpern and Borden prior art references. *Id.* at 6–8.

On January 2, 2014, the examiner accepted Stallman's amendments to claims 3 and 10, but nevertheless issued a final rejection of the claims, again concluding the claims were unpatentable as obvious over Rosencwaig and Opsal. Resp. [#57-11] Ex. 11 (Jan. 2, 2014 Office Action) at 5–12.

On March 12, 2014, Stallman submitted another RCE of the '260 Patent. He canceled the "device" claims 1 through 5 in favor of the method claims 6 to 12, and substituted the term "silicon semiconductor sample" for the term "semiconductor sample" in method claim 6. Resp. [#57] Ex. 12 (Mar. 12, 2014 Amendment) at 2–4. Stallman again responded to the examiner's "obviousness" rejection, asserting the following statements which Xitronix claims constitute material misrepresentations because they directly contradict the final judgment in the First Lawsuit:

> "As discussed below, the prior art fails to teach a method of analyzing silicon semiconductor samples using [the 360 to 410 nm] wavelength range."
>
> "The first point to note is that none of the prior art related to measuring the modulated reflectivity on silicon semiconductor samples taught the claimed probe beam wavelength of 360 to 410 nm."
>
> "To combat this omission the examiner relies on a single patent to Rosencwaig that relates to the measurement of the biological tissue."
>
> "However, . . . one skilled in the art . . . would not assume that the methods described in Rosencwaig would be suitable for such samples, particularly when the prior art relating to semiconductor samples teach different wavelengths."
>
> "[A]mended method claim 6 is not taught or suggested by a combination of Rosencwaig and Opsal."

*Id.* at 4–6.

Upon review, the examiner found Stallman's arguments "persuasive" and concluded "the prior art of record fails to disclose or render obvious a method for evaluating a silicon semiconductor sample . . . wherein the wavelength is between 360 and 410 nm." Resp. [#57]

Ex. 13 (April 22, 2014 Notice of Allowability) at 3. The '260 Patent ultimately issued on August 26, 2014.

In support of its *Walker Process* claims, Xitronix contends Stallman repeatedly represented to the examiner that the prior art relating to semiconductor samples did not teach the 360 to 410 nm wavelength range, an argument previously rejected by the jury and this Court in the First Lawsuit. Moreover, Xitronix claims Stallman deliberately omitted material facts by failing to disclose that KLA did not appeal the judgment in the First Lawsuit and by failing to explicitly tell the examiner the claims presented in the '260 Patent mirror the claims invalidated in the First Lawsuit. But for these affirmative misrepresentations and deliberate omissions, Xitronix argues, the examiner would not have allowed the patent.

KLA moves for summary judgment, arguing Xitronix cannot establish two elements of a *Walker Process* claim: (1) Stallman made affirmative misrepresentations or deliberate omissions in prosecuting the '260 Patent, and (2) the '260 Patent would not have issued but for Stallman's alleged misrepresentations and omissions. The parties fully briefed the motion, and it is now ripe for the Court's consideration.

## Analysis

### I.     Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing

sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

To prevail on a *Walker Process* claim, a plaintiff must show: (1) a false representation or deliberate omission of a fact material to patentability, (2) made with the intent to deceive the patent examiner, (3) on which the examiner justifiably relied in granting the patent, (4) but for which misrepresentation or deliberate omission the patent would not have been granted ("but-for" materiality), and (5) the "necessary additional elements" of an underlying antitrust violation. *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1069–70 (Fed. Cir. 1998); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364 (Fed. Cir. 1998). The party asserting fraud on the PTO must show by clear and convincing evidence there was an intentional misrepresentation or a withholding of a material fact from the PTO. *Vandenberg v. Dairy Equip. Co.*, 740 F.2d 1560, 1568 (Fed. Cir. 1984).

KLA argues it is entitled to summary judgment because Xitronix cannot show—as the Federal Circuit requires—that (1) the '260 Patent was obtained through affirmative misrepresentations or deliberate omissions, and (2) the '260 Patent would not have issued but for Stallman's alleged misrepresentations or omissions. The Court considers each of these arguments in turn.

### A. Affirmative Misrepresentations or Deliberate Omissions

Xitronix presents two theories for fraud on the PTO: (1) Stallman made affirmative misrepresentations to the PTO regarding the status of the prior art, and (2) Stallman deliberately failed to inform the examiner of the significance of the relationship between the pending claims of the '260 Patent and the invalidated claims of the '441 Patent.

### i.     Affirmative Misrepresentations

Xitronix's first theory for fraud on the PTO is that Stallman made an affirmative misrepresentation regarding the status of the prior art. Two filings by Stallman are at issue: his proposed amendment on October 8, 2013, and his RCE of the '260 Patent on March 12, 2014. To determine whether a genuine issue of material fact exists as to whether Stallman's remarks constitute affirmative misrepresentations, the Court must determine (1) whether the remarks were inaccurate, and (2) whether any inaccurate remarks were factual or constituted attorney argument. *See WesternGeco L.L.C. v. ION Geophysical Corp.*, No. 4:09-cv-1827, 2012 WL 567430, at *18 (S.D. Tex. Feb. 21, 2012) (discussing whether alleged material misrepresentations constituted inequitable conduct).

In his initial rejection of '260 Patent claims, the examiner explained the claims are unpatentable as obvious over Rosencwaig and Opsal. In response, Stallman filed a proposed amendment on October 8, 2013, in which he stated:

> "As discussed below, the prior art fails to teach [the 360 to 410 nm] wavelength range for use in semiconductor samples when performing modulated optical reflectivity measurements."

Oct. 8, 2013 Amendment at 6.

Xitronix claims this is an affirmative misrepresentation of material fact, because it directly contradicts the final judgment in the First Lawsuit which invalidated the same claims in the '441 Patent based on a finding of obviousness. However, when read in the context of Stallman's subsequent statements, the Court finds this statement does not constitute a misrepresentation, but instead an accurate description of the four prior art references—Rosencwaig, Opsal, Alpern, and Borden—which served as the basis of the examiner's initial rejection of '260 Patent.

For instance, following this statement, Stallman introduced Rosencwaig and Opsal as the relevant prior art under discussion, and proceeded to explain how the Rosencwaig and Opsal references do not disclose the invention. *Id.* at 7–8. Stallman concluded the section by stating,

> "Based on the above, it is respectfully submitted that independent claims 1 and 6 are not obvious based on *a combination of Rosencwaig and Opsal*."

*Id.* at 8 (emphasis added).

Stallman then addressed two other prior art references, Alpern and Borden, and concluded:

> "[N]either Alpern nor Borden overcome the deficiencies of the primary references in rendering obvious applications' invention as defined by the claims."

*Id.*

The fact that Stallman addressed Alpern and Borden separately suggests his earlier statement—that "the prior art fails to teach [the 360 to 410 nm] wavelength range for use in semiconductor samples when performing modulated optical reflectivity measurements"—referred only to Rosencwaig and Opsal and not all the prior art in the world. Moreover, the examiner subjectively understood it as such, because in his January 2, 2014 Office Action, the examiner wrote, "[Stallman] appears to argue that reference Rosencwaig doesn't teach the claimed probe wavelength range." Jan. 2, 2014 Office Action at 6. Had the examiner understood Stallman's statement to refer to all prior art references, he would not have limited his response regarding the obviousness of the pending claims to one prior art reference.

Stallman's remarks in the RCE filed on March 12, 2014 are substantially similar to the remarks contained in the amendment filed on October 8, 2013:

> "As discussed below, the prior art fails to teach a method of analyzing silicon semiconductor samples using [the 360 to 410 nm] wavelength range."

11

> "The first point to note is that none of the prior art related to measuring the modulated reflectivity on silicon semiconductor samples taught the claimed probe beam wavelength of 360 to 410 nm."

*Id.* at 4.

Although these statements appear broad when read in isolation, Stallman made the following statements which suggest these remarks—when read in context—refer only to Rosencwaig and Opsal, and not all prior art:

> "To combat this omission the examiner relies on a single patent to ***Rosencwaig*** that relates to the measurement of the biological tissue."
>
> "[O]ne skilled in the art . . . would not assume that ***the methods described in Rosencwaig*** would be suitable for such samples, particularly when the prior art relating to semiconductor samples teach different wavelengths."
>
> "***Based on the above***, it is respectfully submitted that amended method claim 6 is not taught or suggested by ***a combination of Rosencwaig and Opsal***."

*Id.* at 4–6 (emphasis added). Stallman addressed the Alpern and Borden references separately, which again confirms his previous statements referred only to Rosencwaig and Opsal.

However, even assuming these statements misstated the state of the prior art, Stallman's remarks may fairly be viewed as attorney argument and not factual misrepresentations. The law prohibits a prosecuting attorney from misrepresenting material facts; it does not prevent an attorney from making arguments in favor of patentability. Indeed, where a prior art reference has been submitted to the examiner, the examiner is free to reach his own conclusion and does not have to solely rely on the prosecuting attorney's arguments. *See Young v. Lumenis, Inc.*, 492 F.3d 1336, 1348 (Fed. Cir. 2007); *Innogenetics v. Abbott Laboratories*, 512 F.3d 1363, 1379 (Fed. Cir. 2008). For instance, in *Young*, an attorney prosecuting a patent made three misstatements regarding prior art, but the Federal Circuit nevertheless concluded these misstatements were not affirmative misrepresentation of material fact, because the examiner "had the [prior art

12

reference] to refer to during the reexamination proceeding and initially rejected claim 1 based on that reference." *Id.* at 1349. According to the Federal Circuit, the prosecuting attorney "argued against the rejection, and the examiner was free to reach his own conclusions and accept or reject [the attorney's] arguments." *Id.* Because the misstatements "consist[ed] of attorney argument and an interpretation of what the prior art discloses," they did not constitute affirmative misrepresentations of material fact. *Id.*

In *Innogenetics*, the plaintiff sought to patent a method for genotyping the hepatitis C virus. 512 F.3d at 1368. Prior to applying for the patent in the United States, the plaintiff filed for a patent in the European Patent Office (EPO), and identified a prior art reference, the Cha PCT application, as the "closest prior art." *Id.* at 1378. Upon review, the EPO concluded certain claims in the pending patent were not novel in light of the Cha PCT application. *Id.* at 1379. The plaintiff thereafter amended the claims with a disclaimer that they were "amended to disclaim the teaching of [the Cha PCT application]." *Id.* In applying for an U.S. patent, the plaintiff submitted as prior art references to the PTO both the Cha PCT application and an internal search report which marked the Cha PCT application as "problematic" for the EPO. *Id.* Nevertheless, in his accompanying prior art statement, the prosecuting attorney stated "the references do not relate to the invention and, therefore, further discussion of the same is not necessary." *Id.* The Federal Circuit concluded the prosecuting attorney's statement did not constitute a material omission or misrepresentation. *Id.* Because the Cha PCT application "had been submitted for the patent examiner to examine herself, [the examiner] was free to accept or reject the patentee's arguments distinguishing its invention from the prior art." *Id.*

Stallman's statements regarding the state of prior art—even if construed as misstatements—were made after the final judgment in the First Lawsuit had been submitted to

13

the examiner in an IDS less than two weeks after it was entered and more than three years before the patent ultimately issued. As in *Young* and *Innogentics*, the prior art was disclosed to the examiner, who was then free to reach his own conclusions and either accept or reject Stallman's arguments. Unlike *Young*, the initial rejection of the '260 Patent was not expressly based on the allegedly misrepresented prior art reference. However, by initialing the IDS, the examiner indicated he considered the final judgment prior to reaching his ultimate conclusion. The examiner therefore was not required to rely on Stallman's characterization of the relevant prior art, but instead could accept or reject his remarks upon independent review of the final judgment.

Based on the foregoing, the Court concludes Xitronix has failed to show a fact issue exists as to whether Stallman's remarks constituted affirmative misrepresentations of material facts.

ii.     **Deliberate Omission**

Xitronix's second theory for fraud on the PTO is that Stallman had a duty to not only disclose the final judgment and related litigation materials, but also (1) to inform the examiner that KLA did not appeal the final judgment in the First Lawsuit, and (2) to affirmatively explain the effect of the final judgment in the First Lawsuit on the then-pending '260 Patent claims.

As to Xitronix's first—somewhat ambiguous—argument, the judgment in this case became final when it was entered on January 31, 2011. An appeal of this judgment would not have automatically stayed the Court's holding. *See Arnold v. Garlock, Inc.*, 278 F.3d 426, 438–442 (5th Cir.2001) (applying a four-part test to determine whether a discretionary stay pending appeal should be granted). As such, Stallman had no duty to inform the examiner of the legal

truism that the Court's judgment was final and enforceable when it was entered on January 31, 2011.[3]

As to Xitronix's second argument, it is undisputed that Stallman disclosed the final judgment and all other relevant litigation materials from the First Lawsuit. On January 31, 2011, the examiner considered Stallman's submission of the jury's finding of obviousness. IDS at 27. On February 7, 2011, the examiner allowed the claims in the '260 Patent over the jury's finding of obviousness. IDS at 19. Three days later, Stallman submitted a RCE of the '260 Patent and an IDS listing the "Executed ORDER from the United States District Court for the Western District of Texas, Austin Division, Case No. A-08-CA-723-SS, dated January 31, 2011, 13 pages in length" and other litigation materials. *Id.* at 94. On July 12, 2013, the examiner initialed the IDS, indicating he considered the final judgment in the First Lawsuit, as well as Xitronix's litigation briefs on these issues. *Id.* On July 25, 2013, the examiner rejected the pending claims of the '260 Patent, concluding certain claims were obvious over Rosencwaig in view of Opsal. July 25, 2013 Office Action at 3–8.

In *C.R. Bard*, the defendant made a similar argument in asserting defenses of fraud and inequitable conduct against the plaintiff's infringement suit. 157 F.3d at 1364. Although the plaintiff disclosed a bulk price quotation to the PTO, the defendant argued the plaintiff should have flagged this document and described its significance to the examiner, "lest it be overlooked in the volume of paper." *Id.* at 1366. The Federal Circuit disagreed, finding "these documents, all in the prosecution history, are easily read" and concluding there was no evidence of material withholding or provision of false information supporting a claim of fraud. *Id.*

---

[3] Moreover, KLA never threatened to enforce the patent at issue, and as of July 29, 2015, there was decidedly no threat of ongoing harm, since KLA disclaimed the relevant claims of the '260 Patent with the PTO. *See supra* Background at 4 n1.

15

As in *C.R. Bard*, this is not a case where the pertinent prior art reference is buried in a mound of information submitted to the PTO. Rather, the IDS identifying the final judgment listed only five items, all of which related to the First Lawsuit. Moreover, the examiner's initials on the IDS "compel the presumption 'that the examiner did consider the reference.'" *Molins POLC v. Textron, Inc.*, 48 F.3d 1172, 1184 (Fed. Cir. 1995); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008) (noting the PTO is "a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents."). Xitronix has failed to proffer sufficient evidence creating a fact issue as to whether the examiner adequately considered the Court's final judgment in the First Lawsuit.[4]

The examiner in this case was "fully apprised" of the final judgment in the First Lawsuit and "able to consider it and any potential effects it may have on the patentability of the claims before issuing" the July 25, 2013 Office Action. *See Young*, 492 F.3d at 1349. "The essence of the duty of disclosure is to get relevant information before an examiner in time for him to act on it." *Id.* at 1349. That occurred here: Stallman disclosed the final judgment to the examiner with ample time for him to consider its relevance and effect on the then-pending '260 Patent claims.

Based on the foregoing, the Court concludes Xitronix has failed to show a fact issue exists as to whether Stallman's remarks constituted deliberate omissions.

---

[4] Xitronix also argues Stallman's amendment of the '260 Patent claims to change the term "optimize" to "maximize" in response to the examiner's suggestion constitutes a fraudulent omission, because "Stallman never pointed out or informed the examiner that the Court had held this same language indefinite in a judgment that became law of the case." Resp. [#57] at 19. Five pages of the order entered contemporaneously with the final judgment in that case were devoted to explaining the Court's conclusion that some claims of the '441 patent were invalid because the phrase "substantially maximize the strength of the output signal" was indefinite. Order of Jan. 31, 2011 [#210] at 5–9, the First Lawsuit. The examiner indicated he considered the final judgment and related litigation materials a mere two weeks before the July 25, 2013 Office Action. Without more evidence to overcome the presumption the examiner did in fact consider these documents, the Court is not inclined to assume the examiner simply missed the relevance of five pages of the order entered contemporaneously with the final judgment.

B.      **"But-For" Materiality**

Xitronix argues the '260 Patent would not have issued but for Stallman's misrepresentations and omissions. Even assuming Stallman's remarks constituted affirmative misrepresentations, Xitronix has failed to proffer any meaningful evidence suggesting these misrepresentations qualify as material under the "but-for" standard, especially when the final judgment was conspicuously disclosed to the examiner with ample time for the examiner to consider it and either accept or reject Stallman's arguments regardking the state of the prior art. Xitronix has likewise failed to proffer any meaningful evidence suggesting an explicit description of the significance of the final judgment to the examiner would have altered his ultimate decision to issue the '260 Patent. Although Xitronix has repeatedly argued that the examiner was unaware of the jury verdict and final judgment invalidating the claims at issue, the Court suspects the examiner was in fact aware of the Court's holding but chose to ignore it.[5] It would not be the first time the PTO, an administrative agency, overrode a final judgment of an Article III court, and it will likely not be the last. Because Stallman's alleged misrepresentations and deliberate omissions do not satisfy the but-for materiality standard, they cannot serve as the predicate act for *Walker Process* fraud.

### Conclusion

Xitronix has failed to show a fact issue exists as to whether Stallman made fraudulent representations and omissions. Xitronix has further failed to show the '260 Patent would not have issued but for Stallman's alleged fraudulent representations and omissions. That the

---

[5] Indeed, a Xitronix email dated February 8, 2011 acknowledges that it is not altogether clear the PTO would have reconsidered its decision and disallowed the '260 Patent even after the Court's contrary ruling in the final judgment was disclosed. Mot. Summ J. [#56-8] Ex. 7 (Xitronix Email February 8, 2011) at 3 ("[G]iven the Examiner's apparent non-concern for the Court's invalidity holdings, it is not unfathomable that the Examiner would provide a second notice of allowance even after the Order and Judgment were properly provided.").

examiner reached a different conclusion than the jury regarding the claims at issue does not give rise to *Walker Process* fraud. As a result, KLA's motion for summary judgment is GRANTED.

Accordingly,

IT IS ORDERED that Defendant KLA-Tencor Corporation's Motion for Summary Judgment [#56] is GRANTED.

SIGNED this the 26th day of August 2016.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE